Reynolds L. Searle
        vs.     } Law No.1268
Grace M. Mitchell
RESCRIPT
July 11, 1927

SUMNER, J. Plaintiff has brought suit against the defendant to recover damages for the alienation of his wife's affections. The jury returned a verdict for the plaintiff for $700 and defendant has filed her petition for a new trial.

The defendant is the mother of plaintiff's wife. She was originally opposed to the marriage, her daughter being something under eighteen years of age at the time, but finally consented and attended the wedding, which took place February 27, 1926, at the daughter's future home, the residence of her father-in-law to be.

Some time in July plaintiff took his wife over to her mother's house and left her there. as he supposed, for a call, and when he returned later that afternoon she refused to go back with him. She stayed at her mother's house some two weeks and after repeated urging on the plaintiff's part and apparently some promises made by him, she returned to him. She finally left him on September 2nd, 1926, and on January 4, 1927, he filed a petition for divorce in which he made many serious charges against her. This divorce was granted in February on the ground of desertion and denied on all other grounds.

He claimed in his testimony that his mother-in-law, the defendant, had always been opposed to the marriage and that it was because of her attitude and her urgings that her daughter finally returned to her; that Mrs. Mitchell admitted to him that she had made various statements to her daughter which would tend to alien-

ate her affections from the plaintiff.

The testimony showed an apparent fondness and affection of Mrs. Reynolds Searle for her husband and the Court believes that she did at one time have such affection.

The defendant frankly admitted that she did not care for Searle and advised her daughter not to marry him, but that she finally consented under the circumstances and attended the wedding. She denies urging her daughter to leave Searle, but says she did tell her daughter that her home was open to her at any time she chose to return. It is admitted that Mrs. Mitchell, the defendant, did take care of Searle at her home before he was married for a periof of several days and perhaps two weeks after an operation.

A Mrs. Lee testified that she tried to reconcile the two, and had them over to her house for that purpose, but that the mother came with the daughter, and the daughter watched her mother constantly and seemed to be under her control.

There are several questions to be answered:

Was the plaintiff deeply attached to his wife?

Was there any justification for her leaving him, and was the amount awarded a fair remuneration to the plaintiff for what he had lost?

The daughter, Helen, wife of the plaintiff, gave a picture of her surroundings and the reasons that led her to leave her husband. She was clear-headed and self-possessed on the witness stand, paid little attention to her mother during her examination, and showed no signs of being under the domination of her mother. She said that her husband would not work; that he was at a camp away from her, with his friend Capwell, a great deal during the summer; that at his request she had no company visit her; that her husband struck her at least twice, detailing the circumstances on each occasion; that there were eight persons in the household of nine rooms; that the head of the family, her husband's father, was not on speaking terms with his deceased wife's mother, who, to some extent, at least, had charge of the house.

The picture she paints of her domestic life is not attractive and the Court is inclined to believe that some of her charges are true. The Court is not attempting to justify her leaving her husband—that matter would properly be decided on the petition for divorce—but it does appear that she had reasons which might naturally lead some wives to leave their husbands.

The allegations made by the plaintiff against his wife in his petition for divorce seem to the Court illuminating. He testifies "no matter what she done, I knew Mrs. Mitchell was behind it." With this premise he then proceeds to make extraordinary charges against his wife in his divorce petition, viz: that she told him that she had had an abortion committed; that she had taken money, bonds and other articles of value from him; that she altered his books of account to cover money taken by her and others; that she lied to deceive him and consipred with her mother, brother and others to injure him in his business to ruin him; that she conspired with her brother and others to trap him into the appearance of having committed adultery and to manufacture evidence of such; that she has associated intimately with a former suitor since deserting him and has circulated false reports about him. Thus, within a period of a little over three months, his alleged love and affection had turned into a bitter revulsion of feeling and it seems doubtful if his affection for her had ever been deep.

Plaintiff showed a bad temper and a lack of restraint—to say nothing of delicacy—when he could so quickly descend to these charges. If she

was the type of woman he alleged in his divorce petition, her affections would be of little value to him and he would well be rid of her.

The Court feels that these allegations in the divorce petition constitute strong confirmation of the story that the plaintiff's wife tells of him. He testified in this case that he believed that the allegations in the divorce petition were true. His father and his friend Capwell both testified that plaintiff's wife was in a family way when she left petitioner the first time. His attorney, Mr. Champlin, after this testimony had gone in, announced that he disavowed any charges of an abortion and it was stated by plaintiff and his father that when plaintiff's wife returned to her husband, after an absence of nearly two weeks, she came back in apparent perfect health, which would seem also to negative this charge of an abortion.

The Court believes that the testimony strongly preponderates in behalf of the defendant and the motion for a new trial is granted.

For Plaintiff: W. R. Champlin.

For Defendant: Morgan & Morgan.